NOVATEL COMMUNICATIONS, INC.,
a Delaware Corporation,
Plaintiff–Appellant,

v.

CELLULAR TELEPHONE SUPPLY,
INC., a New York Corporation,
Defendant–Appellee.

No. 87–8791.

United States Court of Appeals,
Eleventh Circuit.

Sept. 29, 1988.

---

Charles C. Murphy, Jr., Vaughan, Roach, Davis, Birch & Murphy, Alan A. Wolper, Terry R. Weiss, Atlanta, Ga., for plaintiff-appellant.

Peter C. Canfield, Dow, Lohnes, & Albertson, Howard Graff, Terrence B. Adamson, Atlanta, Ga., for defendant-appellee.

Before VANCE and HATCHETT, Circuit Judges, and SCOTT[*], District Judge.

HATCHETT, Circuit Judge.

In this commercial litigation case, we affirm the district court's rulings regarding damages recoverable, admission of evidence, and the proper interpretation of contract provisions.

## BACKGROUND

Appellant, Novatel Communications, Inc. (Novatel) is a wholly-owned subsidiary of Novatel Communications, Ltd. (Novatel–Canada), a Canadian corporation engaged in the business of research, development, manufacture, and marketing of cellular telephones. In 1983, Novatel–Canada formed Novatel for the sole purpose of distributing, selling, and servicing Novatel cellular telephones throughout the United States.[1] Investors formed appellee, Cellular Telephone Supply, Inc. (CTSI), a New York corporation, in the fall of 1983 for the sole purpose of distributing Novatel cellular telephones.

Novatel–Canada and an investor formed Carcom, a 51–percent subsidiary, for the purpose of marketing Novatel telephones to the OEM market (original equipment manufacturers for the automotive industry). On the other hand, Novatel–Canada directed Novatel to market Novatel telephones to the traditional communications markets.

In November, 1983, CTSI and Novatel entered into a three-year, nonexclusive distributor agreement, pursuant to which Novatel granted CTSI the right to market and sell Novatel's products. Under the two-tiered distribution scheme the parties envisioned, Novatel–Canada's cellular telephones were to be shipped to Novatel, which would sell them to distributors, such as CTSI, who, in turn, would sell to dealers Novatel approved. Ultimately, the dealers would resell the telephones to consumers.

---

\* Honorable Thomas E. Scott, U.S. District Judge for the Southern District of Florida, sitting by designation.

1. Novatel Communications, Inc. will sometimes be referred as Novatel–Georgia.

Soon after the distribution agreement became effective, CTSI developed a substantial dealer network. To meet the purchase commitments obtained from various dealers, CTSI ordered some 10,000 telephones from Novatel. Because Novatel–Canada, the manufacturer of the telephones, experienced production problems, shipments to CTSI were often delayed. In addition to production difficulties, Novatel–Canada also experienced difficulty with the quality of telephones it shipped. The failure rate of these telephones at times exceeded 40–percent.

As early as July 1984, CTSI began receiving reports from its dealers that Carcom was selling telephones bearing the Novatel label to CTSI's dealers at prices substantially lower than CTSI's average price to its dealers. It was CTSI's understanding that Carcom would not be its competitor because Carcom would not sell telephones bearing the Novatel label but, rather, would market only phones bearing the "Carcom" label, and in only the OEM market. CTSI alleges that the Carcom competition caused tremendous difficulties because of CTSI's inability to compete with the lower prices which Carcom offered CTSI's dealers. Despite CTSI's numerous attempts to obtain price reductions from Novatel, CTSI was never able to do so.

In January, 1985, Novatel–Canada announced its intention to reorganize its marketing of telephones in the United States by eliminating the sale of telephones from Novatel and consolidating all cellular telephone distribution under Carcom. Pursuant to this plan, Carcom assumed Novatel's rights and obligations under all then-existing distributor agreements, including that with CTSI.

Following the reorganization, Novatel–Canada informed CTSI that CTSI would have to purchase Novatel telephones from Carcom. CTSI contends that Carcom refused to honor the distributor agreement which CTSI had with Novatel and that Carcom refused to treat CTSI as a distributor, rather than a dealer. Although CTSI had never been granted a formal line of credit, Carcom advised CTSI that it would continue Novatel's informal practice of shipping telephones on credit, provided that CTSI would agree to a repayment schedule and provide security to cover its outstanding debt, which then totaled approximately $250,000. Because CTSI refused to commit to a repayment plan, Novatel–Canada instructed Carcom to ship telephones to CTSI only on a cash-in-advance or cash-on-delivery basis.

Although CTSI continued to make payments on a cash-only basis for a short time, it was unable to substantially reduce the balance which it owed to Novatel. Carcom subsequently discontinued sales to CTSI.

In April, 1985, Novatel filed this lawsuit for breach of contract and conversion seeking $239,000 stemming from CTSI's refusal to pay for telephones Novatel shipped to CTSI. CTSI answered and filed a ten-count counterclaim in which it named Novatel–Canada and Carcom as additional defendants. In its counterclaim, CTSI asserted four federal claims: violations of section 1 of the Sherman Act, sections 2(a) and 2(c) of the Robinson–Patman Act, and violations of the Racketeer Influenced and Corrupt Organizations Act (RICO). CTSI also asserted seven state law claims: breach of contract, tortious interference with contractual rights, tortious interference with business relationships, breach of warranty, fraud, fraudulent inducement, and violations of Georgia's RICO statute.

Following extensive discovery, Novatel–Canada, Novatel, and Carcom filed motions for summary judgment. Because CTSI did "not den[y] receiving products for which it ha[d] become indebted to Novatel–Georgia," the district court granted Novatel's motion for summary judgment on the issue of liability, but left open the amount of damages to which Novatel was entitled. In addition, the court dismissed all counts of CTSI's counterclaim, except for Count I (breach of contract) on the following issues: (1) whether Novatel–Canada could be held liable for Novatel's breach on an alter ego theory; and (2) whether Novatel breached the distributor agreement by the delayed delivery of telephones, by refusing to sell

to CTSI, or by refusing to sell to CTSI at the price specified for distributors.[2]

Prior to trial, Novatel filed numerous motions, including a motion which the district court granted to have CTSI's alter ego claim against Novatel–Canada heard separately. At the close of CTSI's case at trial, Novatel moved for a directed verdict as to each of CTSI's three grounds alleged to have constituted a breach of the distributor agreement. The court granted the motion with respect to CTSI's "delivery delays" claim, but reserved ruling on the remainder of Novatel's motion as to the other two claims. At the close of all evidence, the district court denied Novatel's renewed motion for a directed verdict, thereby permitting the case to go the jury on the "refusal to deal" and "best distributor pricing" claims. The jury returned a verdict in favor of CTSI for $1,196,143.72 and in favor of Novatel for $196,143.72. The jury's net verdict in favor of CTSI in the sum of $1,000,000 did not include an award of punitive damages. Novatel subsequently filed a motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. The district court denied the motion.

Novatel now appeals from the final judgment. Although CTSI filed a notice of cross-appeal from the district court's order granting Novatel's motion for summary judgment which dismissed nine counts of CTSI's counterclaim, both parties have since filed a consent motion to voluntarily dismiss the cross-appeal.

## ISSUES

The issues on appeal are:

1. Whether the district court erred by denying Novatel's motion in limine to restrict CTSI's proof of lost profits by virtue of paragraph 14 of the distributor agreement;

2. whether the district court erred by permitting CTSI to introduce evidence re-

garding product defects in equipment which it purchased from Novatel;

3. whether the district court erred by failing to direct a verdict in favor of Novatel on CTSI's breach of contract claim;

4. whether CTSI's proof of damages was legally and factually sufficient to support the jury's verdict;

5. whether the district court erred by permitting CTSI to introduce statements made by Carcom representatives; and

6. whether the district court's jury charge on punitive damages constitutes prejudicial error.

## DISCUSSION

### A. Lost Profits

▪ Novatel first argues that the district court erred by denying its pretrial motion in limine seeking to exclude all evidence offered to support CTSI's claims for lost profits. To buttress this claim, Novatel relies upon the following language contained in paragraph 14 of the distributor agreement which, in Novatel's view, excludes recovery of lost profits in the event of Novatel's breach:

In no event shall Novatel be liable for any tort damages or indirect, special, general, incidental or consequential damages, including but not limited to loss of profits or anticipated profits. This paragraph shall supersede any paragraphs of this agreement which are inconsistent herewith.

CTSI argues that paragraph 14 does not bar its recovery of lost profits in the event of Novatel's breach. Discrediting Novatel's argument, CTSI contends that the language relied upon by Novatel has been extracted out of context from a warranty provision in the distributor agreement which has no application to CTSI's breach of contract claim.[3] We agree.

---

2. Carcom was dismissed on personal jurisdiction grounds.

3. The full text of paragraph 14 of the distributor agreement provides as follows:

*Warranties.* Novatel's sole warranty with respect to the sale of the products shall be that

for a period of twelve (12) months after the date of the shipment of the products to distributor, the products shall meet Novatel's published specifications regarding the products ('specifications'). Except as exclusively set forth in this paragraph, Novatel does not

Although Novatel's argument is appealing at first blush, we have little difficulty in concluding that the damage limitation clause embodied in paragraph 14 applies *only* to a limited repair remedy for breach of *warranty* and may not serve as a bar to the breach of contract claims upon which CTSI prevailed at trial. *Cf. Willoughby Roofing and Supply Co. v. Kajima International, Inc.*, 776 F.2d 269, 270 (11th Cir. 1985) (holding that a contract provision which, by its express terms, limited the remedy for termination of a contract to actual damages, did *not* also limit the remedy available for breach of the contract or for fraud, to actual damages). We find the Ninth Circuit's reasoning in *Hawaiian Telephone Co. v. Microform Data Systems, Inc.*, 829 F.2d 919 (9th Cir.1987) persuasive on this point.

At issue in *Hawaiian Telephone* was whether a repair warranty provision in a contract which excluded consequential damages could be invoked by a seller who had failed to deliver a telephone system in accordance with the terms of the contract. *Hawaiian Telephone*, 829 F.2d at 923. When framing the issue, the court first observed that the warranty provision purported to exclude liability for consequential damages only *after* a telephone system which complied with contract specifications had been "delivered and installed." *Hawaiian Telephone Co.*, 829 F.2d at 925. Thus, the court reasoned, "although provision was made in the contract which purportedly excluded the recovery of consequential damages, this provision, being inextricably tied to the express warranties and limited repair remedy, did not preclude recovery of consequential damages for [the seller's] breach in failing to develop and

make any express or implied warranties, including, but not restricted to, the implied warranty of title and the implied warranties of merchantability and fitness for a particular purpose. Novatel's sole liability for this warranty shall be to repair or replace, at its option, any of the products not in compliance with the specifications and under no circumstances shall Novatel's liability exceed the dollar amount of the purchase price paid by distributor for any products not in compliance with the sole warranty set forth herein.

deliver the system as contracted." *Hawaiian Telephone*, 829 F.2d at 925.

Similar to the warranty provision in *Hawaiian Telephone*, the warranty provision contained in paragraph 14 pertains only to repair remedies which are available to the purchaser in the event of a breach of warranty. We agree with CTSI that paragraph 14 may not be extended to insulate Novatel from wholly unrelated claims for breach of contract. Accordingly, we hold that the district court properly denied Novatel's pretrial motion in limine seeking to exclude all evidence offered to support CTSI's claims for lost profits.

### B. Product Defects

Novatel next argues that the district court erred by permitting CTSI to introduce evidence of product defects in cellular telephones shipped from Novatel to CTSI. Novatel's argument proceeds as follows: Prior to trial, Novatel moved in limine to exclude all evidence of product defects in telephones shipped to CTSI. The principal basis for this motion was the district court's ruling on summary judgment that CTSI could not prevail on its counterclaim against Novatel for breach of warranty to repair or replace defective equipment. Therefore, Novatel argues, the district court's ruling on summary judgment reduced CTSI's breach of contract claim to three specific issues: whether Novatel breached the distributor agreement (1) by delayed delivery of telephones; (2) by refusing to continue to sell to CTSI in April, 1985; and (3) by refusing to sell to CTSI at the "best" price specified for distributors. Because evidence of product defects bore no relevance to any of these issues, Novatel argues, the verdict should be reversed and a new trial ordered.

Distributor agrees that any modifications or alterations made by anyone other than Novatel or any misuse, accident, negligence, or abnormal conditions of operations of any kind of the products will void all warranties made by Novatel. In no event shall Novatel be liable for any tort damages or indirect, special, general, incidental or consequential damages, including but not limited to loss of profits or anticipated profits. This paragraph shall supersede any paragraphs of this agreement which are inconsistent herewith.

CTSI argues that its introduction of evidence of product defects was entirely within the scope of the district court's ruling that such evidence could be introduced for the limited purpose of supporting a credit on the obligation of CTSI to Novatel. Moreover, CTSI argues, as the trial progressed, the district court broadened its initial limitation of product defect evidence to allow for the admission of such evidence on the issues of (1) the methods by which CTSI repaired defective telephones, and (2) the existence and cause of delivery delays. Because, in CTSI's view, Novatel can demonstrate no prejudice resulting from the district court's admission of product defects evidence, the court properly denied Novatel's motion for a new trial.

As a general matter, "[d]eterminations of admissibility of evidence rest largely within the discretion of the trial judge and will not be disturbed on appeal absent a clear showing of an abuse of discretion." *Feazell v. Tropicana Products, Inc.*, 819 F.2d 1036, 1041 (11th Cir.1987) (citing *United States v. Russell*, 703 F.2d 1243 (11th Cir.1983)). On another occasion, we have articulated a much more stringent standard, noting that a party seeking a new trial on the ground that the district court erred by admitting certain evidence must demonstrate not only that the district court abused its discretion, but "that the admission of the evidence affected ... substantial rights." *O'Donnell v. Georgia Osteopathic Hospital, Inc.*, 748 F.2d 1543, 1547 (11th Cir.1984).

■ With these principles in mind, we cannot say that the district court erred by admitting evidence of products defects in telephones shipped from Novatel to CTSI. Having reviewed the record, it is clear that, in each instance, the district court carefully considered the relevance of the proffered testimony before allowing its admission. No clear abuse of discretion appears.

### C. Proof of Damages

Finally, Novatel argues that CTSI's proof of damages was both legally and factually insufficient. Specifically, Novatel argues that CTSI's proof of lost profits failed to meet the applicable standard and that the testimony of CTSI's damage expert was too speculative to have been presented to the jury. We find no merit in either of these contentions.

In a diversity case, the determination of damages constitutes a substantive issue which turns upon state law. *Hill v. Nelson*, 676 F.2d 1371, 1374 (11th Cir.1982). Consequently, we look to Georgia law in determining the lost profits, if any, to which CTSI is entitled. *See, e.g., Bassett Furniture Industries v. NVF Company*, 576 F.2d 1084, 1088 (5th Cir.1978).[4]

As this court observed in *McDermott v. Middle East Carpet Co.*, 811 F.2d 1422 (11th Cir.1987), Georgia courts have generally shown reluctance in awarding lost profits to developing business ventures. *See, e.g., Radio of Georgia, Inc. v. Little*, 129 Ga.App. 530, 199 S.E.2d 835, 838 (1973) ("[R]ecovery for lost profits is not generally allowed for injury to a new business with no history of profits.") (quoting 22 Am.Jur.2d Damages § 173); *Molly Pitcher Canning Co. v. Central of Georgia Railway Co.*, 149 Ga.App. 5, 253 S.E.2d 392, 397 (1975). The rationale underlying this rule is that " 'evidence of expected profits from a new business is too speculative, uncertain, and remote to be considered, and does not meet the legal standard of reasonable certainty.' " *McDermott*, 811 F.2d at 1427–28 (quoting *Radio*, 199 S.E.2d at 838). As we observed in *McDermott*, however, where a claimant can demonstrate a "track record" of profitability, evidence can be considered and lost profits may be recovered. *See Bennett v. Smith*, 245 Ga. 725, 267 S.E.2d 19, 20 (1980).

■ Novatel submits that CTSI's evidence of "lost profits" should not have been submitted for the jury's consideration because CTSI was unable to demonstrate a history of profits. CTSI argues that all it

---

**4.** The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (in banc) adopted as precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

need do is prove its damages with reasonable certainty and that a history of profitability is not necessary in order to demonstrate "reasonable certainty." We agree.

In the most recent Georgia decision addressing this issue, the Georgia Court of Appeals, although affirming a jury verdict refusing to award damages for lost profits, showed a disinclination to award damages for lost profits except where a business owner has an established history of profits. *Stern's Gallery of Gifts, Inc. v. Corporate Property Investors, Inc.*, 176 Ga.App. 586, 337 S.E.2d 29 (1985), At issue in *Stern's Gallery* was whether a business owner who had sustained a $13,000 loss in his first year of operation and a $3,000 loss in his second year of operation, but who had not yet shown an annual profit at the time the cause of action arose, was entitled to recover damages for lost profits. Notwithstanding its observation that "[i]n such circumstances it would perhaps be reasonable to project that, if the business continued to grow at the same rate, the firm would soon show a profit," the court affirmed the jury's determination that the business owner was not entitled to an award for lost profits. *Stern's Gallery*, 37 S.E.2d at 35. In so holding, the court reasoned as follows:

> Appellant contends, however, that the *weight* of the evidence demands a verdict awarding lost profits. It is well settled that the appellate court must confine its review to the sufficiency of the evidence, *not* its weight. Moreover, this court is constrained to construe the evidence most strongly in favor of the jury verdict ... and not to disturb that verdict except upon a finding of no evidence to support it. There was evidence of record to support this jury's verdict, and we will not substitute our judgment for that of the fact-finder. We must affirm the verdict on this issue and declare this enumeration to be without merit.

*Stern's Gallery*, 337 S.E.2d at 35.

If, as Novatel contends, a history of profitability is required for entitlement to an award for lost profits, the court's task in *Stern's Gallery* would have been a fairly simply one given the fact that the appellant had not yet shown a profit at the time the cause of action arose. It is obvious, however, that a history of profits is only *one* factor to be considered in determining whether recovery may be had for lost profits. As the court in *Stern's Gallery* noted, so long as sufficient evidence supports the jury's verdict, an appellate court should not substitute its judgment for that of the fact-finder. This rule obtains even where the weight of the evidence militates against the jury's verdict. We therefore affirm the jury's determination that CTSI is entitled to an award for lost profits. Although reasonable minds may differ as to the weight of CTSI's proof, sufficient evidence supports the jury's verdict.

■ Lastly, we find no merit in Novatel's contention that the testimony of CTSI's expert witness on the amount of CTSI's alleged damages was too speculative and ill-founded to have been presented to the jury. To the extent that fallacies were present in CTSI's proof of damages, Novatel had ample opportunity through cross-examination to discredit CTSI's expert and demonstrate those weaknesses. "The jury as fact-finder had the task and responsibility of judging the credibility of the witness, resolving the conflicting evidence, and assessing the weight of the expert testimony." *Terrell v. Household Goods Carriers Bureau*, 494 F.2d 16, 20 (5th Cir.), *cert. dismissed*, 419 U.S. 987, 95 S.Ct. 246, 42 L.Ed.2d 260 (1974); *see also Graphic Products Distributors v. Itek Corp.*, 717 F.2d 1560, 1582 n. 41 (11th Cir. 1983). Moreover, the district court instructed the jury that it could accord expert testimony "such weight as you may think it deserves." Given these circumstances, we conclude that the district court properly admitted testimony of CTSI's expert.

We have examined the other issues presented by Novatel and find them to be without merit.