664 So.2d 1011 (1995)
John F. PIGNATO and Lorelei E. Pignato, his wife, Appellants,
v.
GREAT WESTERN BANK, Appellee.
No. 94-0661.
District Court of Appeal of Florida, Fourth District.
October 18, 1995.
Rehearing, Rehearing, and Certification of Questions Denied January 10, 1996.
*1012 James A. Bonfiglio of James A. Bonfiglio, P.A., Boynton Beach, for appellants.
Steven Ellison of Broad and Cassell, West Palm Beach, for appellee.
Rehearing, Rehearing En Banc, and Certification of Questions Denied January 10, 1996.
WARNER, Judge.
To forestall the foreclosure of their home, the appellants charged that in loaning money to them to refinance their residence, the appellee (hereinafter referred to as "the bank") did not include the intangible tax it paid to the Clerk of the Court to record its mortgage as a "finance charge" required to *1013 be disclosed under the Federal Truth in Lending Act (TILA). 15 U.S.C.A. § 1601 et seq. (West 1982 & Supp. 1995). The appellants claimed that this was a violation of TILA, which allowed them to rescind the transaction. The trial court ruled against the appellants and ordered foreclosure. Subsequent to the judgment, the Eleventh Circuit decided Rodash v. AIB Mortgage Co., 16 F.3d 1142 (11th Cir.1994), which supports the appellants' argument.[1] Disagreeing with Rodash, we hold that the intangible tax may be excluded from the "finance charge" under TILA, and we therefore affirm the final judgment of foreclosure.

Overview of Truth in Lending
In 1968 Congress passed TILA to insure meaningful disclosure of credit terms so that consumers could determine the reasonableness of a lender's charge. E.g., Johnson v. McCrackin-Sturman Ford, Inc., 527 F.2d 257 (3d Cir.1975). In order to implement TILA, Congress delegated expansive authority to the Federal Reserve Board which promulgated Regulation Z ("Reg. Z"). Reg. Z, 12 C.F.R. Pt. 226 (1994). Absent some obvious repugnance to the statute, Reg. Z should be accepted by the courts, as should the Board's interpretation of its own regulations. Anderson Bros. Ford v. Valencia, 452 U.S. 205, 219, 101 S.Ct. 2266, 2274, 68 L.Ed.2d 783 (1981). The TILA statutes and regulations require the lender to provide the consumer with information regarding the cost of extending credit. This includes a disclosure statement which includes the amount to be financed; the annual percentage rate on the loan; the method of determining the finance charge and the balance upon which the finance charge will be imposed; the amount of the finance charge; the number of payments, due dates or periods scheduled to repay the indebtedness; and the total of payments due over the life of the loan. See 15 U.S.C.A. §§ 1638, 1602(u). In simple terms, the "finance charge" within the definition of TILA consists of more than the payment of interest. It includes all sums that the borrower must pay, directly or indirectly, to obtain credit. See Reg. Z, 12 C.F.R. § 226.4. However, certain payments are permitted to be excluded from the finance charge as will be discussed later.
TILA permits the borrower to rescind a loan transaction until midnight of the third business day following delivery of all of the disclosure materials or the completion of the transaction, whichever occurs last. 15 U.S.C.A. § 1635(a); Reg. Z, 12 C.F.R. § 226.23(a). The right to rescind may extend up to three years if the required notice or material disclosures are not delivered. Rodash, 16 F.3d at 1145; Reg. Z, 12 C.F.R. § 226.23(a)(3).
Creditors must strictly comply with TILA. Rodash, 16 F.3d at 1144; In re Porter, 961 F.2d 1066, 1078 (3d Cir.1992). A single violation of TILA gives rise to full liability for statutory damages, which include actual damages incurred by the debtor plus a civil penalty. 15 U.S.C.A. § 1640(a)(1)(2)(A)(i). Moreover, a violation may permit a borrower to rescind a loan transaction, including a rescission of the security interest the creditor has in the borrower's principal dwelling. 15 U.S.C.A. § 1635(a).

The Facts
In 1991, the appellants executed a variable interest rate mortgage loan note in favor of the bank. In compliance with TILA, the bank prepared various disclosure statements of credit terms and the lender's charges for loaning the money. The bank disclosed and charged the appellants $532 intangible tax at closing and included this tax in the "amount financed" but excluded the tax from the "finance charge." The appellants contend that the intangible tax should have been included in the "finance charge," and that due to its exclusion from the "finance charge," both the *1014 "amount financed" and "Finance Charge" are misstated by $532.
After the appellants defaulted in 1993, the bank filed suit to foreclose on the mortgage. The appellants then raised affirmative defenses to the foreclosure, including the TILA disclosure violation for which they demanded recoupment and rescission of the loan and mortgage. Ultimately, the trial court ruled against all of their affirmative defenses and ordered foreclosure of the mortgage. It is from that final judgment this appeal is taken.

Rodash v. AIB Mortgage Co.

Subsequent to the trial court's order, but before the case was heard in this court, the Eleventh Circuit addressed in Rodash whether the inclusion of the Florida intangible tax in the "amount financed" while excluding it from the "finance charge" is a material violation of TILA. The court first noted that TILA defined "finance charge" as "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C.A. § 1605(a); Reg. Z, 12 C.F.R. § 226.4(a). It includes charges imposed on the consumer by someone other than the creditor in certain circumstances. Therefore, the court concluded that the intangible tax was a "finance charge" unless excludable under one of the exceptions in the regulations. Those exceptions are as follows:
(1) "A tax imposed by a state ... on the credit transaction that is payable by the consumer (even if the tax is collected by the creditor)" when the charge is imposed on the consumer by someone other than the creditor. F.R.B. Commentary on 12 C.F.R. § 226.4(a), Comment 3, reprinted in 12 C.F.R. pt. 226, Supp. I;
(2) "[c]harges for filing or recording security agreements, mortgages, ... and similar documents." F.R.B. Commentary on 12 C.F.R. § 226.4(e), Comment 12, reprinted in 12 C.F.R. Pt. 226, Supp. I; and
(3) "[t]axes and fees prescribed by law that actually are or will be paid to public officials for ... perfecting ... a security interest." 12 C.F.R. § 226.4(e)(1).
Rodash, 16 F.3d at 1148. The intangible tax did not fall under the first exception, according to the court, because the tax is imposed on the creditor, not the consumer, for holding the note which is an intangible asset. As the intangible tax is not a recording fee, the court determined that the second exclusion did not apply. Finally, the court concluded that the third exclusion did not apply because the purpose of the intangible tax was most likely revenue enhancement and not perfection of a security interest, which pertains to the proper recordation of the instrument. Id. at 1148-49.

Analysis
With all due respect to the Eleventh Circuit, we believe that its reasoning is flawed with respect to its interpretation of the last exclusion as applied to the Florida intangible tax. In fact, we believe that the Eleventh Circuit's reasoning is contrary to the Commentary to Reg. Z when considered in light of other taxes in Florida which are excludable. The Commentary provides:
4(e) Certain security interest charges.
1. Examples. Examples of charges excludable from the finance charge under § 226.4(e)(1) include:
 Charges for filing or recording security agreements, mortgages, continuation statements, termination statements, and similar documents.
 Stamps evidencing payment of taxes on property if the stamps are required to file a security agreement on the property.
Only sums actually paid to public officials are excludable under § 226.4(e)(1).
Reg. Z, 12 C.F.R. Pt. 226, Supp. I, § 226.4, cmt. 4(e)-1 (1994) (Official Staff Interpretations of Regulation Z).
The example of documentary stamps on security agreements is instructive and should have informed the analysis of the Eleventh Circuit. In Florida, a documentary stamp tax is an excise tax on documents which must be affixed prior to recordation. § 201.01, Fla. Stat. (1993). The Clerk of the Circuit Court in the various counties collects the tax upon documents which must be recorded, but does so as an agent for the Florida Department *1015 of Revenue, which administers the tax. § 201.11(2), Fla. Stat. (1993). Documentary taxes thus form part of the general revenue of the state of Florida. Even though the purpose of the stamp tax is revenue enhancement, the Commentary to Reg. Z permits exclusion of the stamp tax from the "finance charge" because it is necessary to pay the tax in order to record, and thus perfect, the mortgage. Reg. Z, 12 C.F.R. Pt. 226, Supp. I, § 226.4, cmt. 4(e)-1 (1994).
In the same manner, the intangible tax is required to be paid at the time of the recording. § 199.135(1), Fla. Stat. (1993). Further, a mortgage upon real property situated in Florida is not enforceable in a Florida court nor can a mortgage be recorded until the intangible tax is paid, and the Clerk of the Circuit Court "has noted its payment on the instrument or given other receipt for it." § 199.282(5), Fla. Stat. (1993). Just like the documentary stamp tax, the intangible tax is collected by the Clerk of the Circuit Court but administered by the Department of Revenue and becomes part of the general revenue fund of the state. § 199.202, Fla. Stat. (1993). The practical effect of the imposition of the intangible tax and the documentary stamp tax on the participants to the mortgage transaction is identical. They are merely two more taxes collected by the government. Moreover, under Florida law, the two taxes are treated similarly for purposes of computation of usury interest. See Brannen v. Southeast Beach State Bank, 365 So.2d 422, 422 (Fla. 1st DCA 1978).
The Eleventh Circuit cited no authority for its determination that the purpose of the intangible tax precluded its exclusion from the finance charge under 12 C.F.R. section 226.4(e)(1). We cannot find any authority for this reasoning in the regulations. The only requirements of the regulations are that the tax is (1) prescribed by law; (2) paid to a public official; (3) for perfecting a security interest. Reg. Z, 12 C.F.R. § 226.4(e)(1). In both the case of the stamp tax and the intangible tax, each must be paid to perfect the mortgage. Without payment, the mortgage will not be recorded and the security interest will not be perfected. See § 199.282(5), Fla. Stat. (1993). It makes no sense to consider one tax as excludable and the other one as part of the finance charge when both meet the same test.
In addition, the bank has supplied as supplemental authority an opinion of the Attorney General of Florida from 1972 determining that the intangible tax was a "recording tax." It states in pertinent part:
On January 13, 1970, the Cabinet of the State of Florida, sitting as the Department of Revenue, by resolution construed the tax on notes, bonds, or other obligations for payment of money which are secured by mortgage, deed of trust, or other liens upon real property in Florida to be a recordation tax. While the tax in question is included in the intangible tax chapter of the statutes, the nature of a tax is determined by its operation and practical effect rather than by the name applied to it by the legislature. United States v. Lee, (Fla. 1943), 13 So.2d 919. Thus, the tax in question may be considered a recordation tax if that is its operation and effect even though denominated an intangible tax.
Op.Att'y.Gen.Fla. 072-374 (1972). Thus, the Rodash court's interpretation of our intangible tax law is directly contrary to the interpretation of the state officers who are bound to enforce it. We do not consider ourselves bound by the Eleventh Circuit's decision, because it construes Florida law, not Federal law. The rulings of lower federal courts are not binding on state courts, although they may be persuasive on a point of law. State v. Dwyer, 332 So.2d 333, 335 (Fla. 1976). Only decisions of the United States Supreme Court are binding on the state courts of Florida. Board of County Comm'rs v. Dexterhouse, 348 So.2d 916, 918 (Fla. 2d DCA 1977), aff'd, 364 So.2d 449 (Fla. 1978). While in Wylie v. Investment Management and Research Inc., 629 So.2d 898, 900 (Fla. 4th DCA 1993), we indicated that according unusual weight to a decision on an issue rendered by a federal circuit in which the state is located is an appropriate method for deciding federal questions where there is no Supreme Court authority, nothing in Wylie indicates that we are duty bound to follow a federal circuit precedent, particularly when it construes Florida law.
*1016 Although we have analyzed the applicable statutes and Commentary of the Federal Reserve Board as they appeared in the Rodash opinion, the bank has brought to our attention revisions to the Official Commentary which support our view. The revisions were effective April 1, 1995. The Board views them as clarifying its previous Commentary, stating:
[The revised commentary] applies and interprets the requirements of Regulation Z. The revisions clarify regulatory provisions and provide further guidance on issues of general interest... .
Reg. Z, 60 Fed.Reg. 16,771, 16,771 (1995) (emphasis supplied). The revisions specifically mention intangible taxes as an excludable charge. See id. at 16,777 (§ 226.4, cmt. 4(a)-7(iii) (formerly cmt. 4(a)-6) & § 226.4, cmt. 4(e)-1(i) ("Examples are charges or other fees required for filing or recording securing agreements ... and similar documents, and intangible property or other taxes imposed by the state solely on the creditor and payable by the consumer (if the tax must be paid to record a security agreement).")). Based on our foregoing discussion of the Federal Reserve Board's original Commentary to Reg. Z, it is apparent to us that the Federal Reserve Board's revision was intended to clarify the law, and the revision does not make a substantive change in policy. Consequently, the revised Commentary may be retroactively applied. See Pope v. Shalala, 998 F.2d 473, 482-83 (7th Cir.1993). We therefore also apply the revised Commentary to Reg. Z and hold that the intangible tax is excludable from the finance charge under TILA if the creditor itemizes and discloses the intangible tax to the customer. Reg. Z, 12 C.F.R. § 226.4(e).
We have reviewed the other claimed violations of TILA raised by appellant and find no error. Therefore, we affirm the final judgment of the trial court.
DELL and PARIENTE, JJ., concur.
NOTES
[1] Within two weeks after the rendition of the Rodash decision, the Florida Legislature amended section 199.135, Florida Statutes, to assure that the statutory language would permit the exclusion of the intangible tax from the TILA "finance charge." See Ch. 94-353, § 68, at 2572, Laws of Fla. The bank has argued that we should apply the amended statute retroactively to this transaction, as it was clearly the intent of the Legislature to clarify existing law. Because we decide that the tax was excludable under the then existing statute and regulations, we need not reach the question of retroactivity of the statutory amendment.