Harvey A. **NUSSBAUM,** and Donna P. **Nussbaum,** husband and wife, Plaintiffs,

v.

**MORTGAGE SERVICE AMERICA COMPANY, Defendant.**

No. 94–8429–CIV.

United States District Court, S.D. Florida.

Dec. 19, 1995.

Keith Andrew Goldbaum, Zwick, Friedman & Goldbaum, Boca Raton, FL, Richard N. Bell, Irwin B. Levin, Cohen & Malad, Indianapolis, IN, for plaintiffs.

Andrew Paul Gold, Kluger, Peretz, Kaplan & Berlin, Miami, FL, David J. Butler, Tacie H. Yoon, David B. Kaplin, Brownstein & Zeidman, Washington, DC, for defendant.

*ORDER GRANTING, IN PART, AND DE-NYING, IN PART, DEFENDANT'S MOTION TO DISMISS AND CERTI-FYING THIS ORDER TO THE ELEV-ENTH CIRCUIT COURT OF AP-PEALS*[1]

RYSKAMP, District Judge.

THIS CAUSE comes before the Court on Defendant's Motion to Dismiss the

1. This Order involves a controlling question of law over which there exists substantial grounds

Third Amended Class Action Complaint [DE 48], dated February 7, 1995. The Plaintiffs responded in opposition on March 15, 1995 and the Defendant's replied on March 24, 1995. This matter, having been fully briefed, appears ripe for review. For the reasons described below, the Court grants Defendant's Motion to Dismiss with respect to whether the Florida intangible tax must be disclosed as a finance charge under the Truth in Lending Act, and denies the motion without prejudice with respect to the remaining charges.[2]

## I. BACKGROUND

This case asks the Court to decide whether certain charges made by creditors must be disclosed as components of the finance charge in connection with extending credit to borrowers, pursuant to the Truth in Lending Act. On or about November 19, 1993, the Nussbaums refinanced their home by entering into a mortgage transaction with Mortgage Service America, Co. ("MSA"). At the closing of the loan, MSA provided the Nussbaums with a Truth in Lending disclosure statement as required by the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq. ("TILA"). The Nussbaums contend that MSA violated the TILA disclosure requirements by categorizing the Florida intangible tax and other charges as part of the "amount financed" rather than as components of the "finance charge," as those terms are defined by 15 U.S.C. § 1605(a).

On August 2, 1994, the Plaintiffs filed a class action complaint against MSA alleging violations of TILA and Federal Reserve Regulation Z, 12 C.F.R. § 226. Specifically, Plaintiffs claim the Florida intangible tax of $406.00, a flood certification fee of $25.00, a document preparation fee, and a wire fee of $10.00, were all improperly excluded from the finance charge category of the Truth in Lending disclosure statement they received at the loan closing.

On November 16, 1994, Plaintiffs filed their First Amended Class Action Complaint. Nine days later, on November 25, 1994, Plaintiffs moved the Court for leave to file a Second Amended Complaint, adding underwriting and courier fees to the list of improperly disclosed fees. On December 19, 1994, Plaintiffs moved to file a Third Amended Complaint after finding that the underwriting and courier fees referred to in the proposed Second Amended Complaint had been fully disclosed. Accordingly, the Court denied Plaintiffs' Motion to File a Second Amended Complaint as moot, and granted Plaintiffs' Motion to File a Third Amended Complaint in an Order dated January 23, 1995.

In the Third Amended Complaint, the Nussbaums repeat their allegations that the Florida intangible tax should have been disclosed as a finance charge in the TILA disclosure document and add that the flood certification fee, wire fee, and document preparation charges should also have appeared as finance charges. In Count I of the Third Amended Complaint, the Nussbaums seek statutory and actual damages as well as an order declaring that they have a right to rescind their transaction with MSA due to the alleged wrongful non-disclosures. Counts II and III allege state law claims for unjust enrichment and breach of contract based on MSA's passing on to the Nussbaums the obligation to pay Florida's intangible tax on their refinanced mortgage.

The Defendant filed a Motion to Dismiss Plaintiffs' Third Amended Complaint on February 7, 1995.

## II. LEGAL STANDARD

In reviewing a motion to dismiss, the allegations set forth in the complaint and

---

for difference of opinion and an immediate appeal from this Order may materially advance the ultimate termination of litigation. 28 U.S.C. § 1292(b). However, this statute does not vest jurisdiction in the Court of Appeals. The Plaintiffs are required to file a notice of appeal. See *Taylor v. Sterrett,* 640 F.2d 663 (5th Cir.1981).

2. In addition to the instant case, there are over thirty class actions pending in the Southern District of Florida seeking to impose *Rodash v. AIB Mortgage,* 16 F.3d 1142 (11th Cir.1994) liability against lenders. Because the *Rodash* opinion created shock waves both in Tallahassee and Washington, the Eleventh Circuit should give this matter a second look.

all reasonable inferences from the facts alleged by the plaintiff must be taken as true. *Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). The Complaint should not be dismissed unless the plaintiffs can prove no set of facts· in support of their claims which would entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). "Accordingly, the court may dismiss a complaint ... when, on a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall County Bd. of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir.1993).

■ Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint need only be "a short and plain statement of the claim," and as long as the pleadings "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," notice pleading has been satisfied. *Conley v. Gibson* at 47, 78 S.Ct. at 103. As the Eleventh Circuit has noted, "... the threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low." *Quality Foods v. Latin Am. Agribusiness Devel.,* 711 F.2d 989, 995 (1983).

### III. DISCUSSION

■ The Truth in Lending Act ("TILA") 15 U.S.C.A. § 1601 et seq. (West 1982 & Supp.1995) contained in Title I of the Consumer Credit Protection Act, was enacted to promote informed borrowing by requiring lenders to fully disclose to borrowers the terms of credit being extended in credit transactions. Disclosure was meant to protect consumers in lending situations from becoming unknowingly obligated to pay hidden and unreasonable charges imposed by lenders and to permit them to meaningfully compare the terms of credit extended by different lenders. *Johnson v. McCrackin–Sturman Ford, Inc.,* 527 F.2d 257 (3d Cir. 1975). See *Shroder v. Suburban Coastal Corp.,* 729 F.2d 1371, 1380 (11th Cir.1984).

■ Congress charged the Federal Reserve Board with the responsibility of implementing TILA. 15 U.S.C.A. § 1604 (West 1982 & Supp.1995). In response, the Board formulated Regulation Z ("Reg. Z"), Reg. Z, 12 C.F.R. §§ 226 et seq. (1995), which has the force and effect of law. Along with Reg. Z, the Board has prepared and periodically updates official staff commentary interpreting Reg. Z. Courts should accept Regulation Z and the Board's interpretation of Regulation Z, "absent some obvious repugnance to the statute." *Anderson Bros. Ford v. Valencia,* 452 U.S. 205, 219, 101 S.Ct. 2266, 2274, 68 L.Ed.2d 783 (1981).

■ TILA and Reg. Z require lenders to provide consumers with a statement containing information regarding the cost of extending credit. Creditors must disclose all finance charges in the TILA statement to ensure that the costs being charged for credit are not obscured in the price of goods sold. *Rodash v. AIB Mortgage,* 16 F.3d 1142, 1147 (11th Cir.1994). TILA defines finance charge as "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C.A. § 1605(a). See also, Reg. Z, 12 C.F.R. § 226.4(a). Charges imposed on the consumer by someone other than the creditor for services required by the creditor are also considered finance charges. *Johnson v. Fleet Finance, Inc.,* 4 F.3d 946, 949 (11th Cir.1983). Under this broad definition, all amounts the borrower must pay to obtain credit potentially come under the statutory disclosure requirements. However, TILA and Regulation Z provide exceptions to the broad definition of finance charge, which substantially narrow the charges required to be disclosed as finance charges under TILA. 15 U.S.C.A. § 1605(d) & (e); 12 C.F.R. §§ 226.4(c)(d) & (e).

### A. Florida Law.

Although this action is based on the administration and applicability of a federal statute, TILA, that statute draws on the construction of Florida law. The Court must explore the nature, position, and characteristics of Florida's intangible tax as enacted by the Florida Legislature to determine whether the imposition of this tax falls under one of TILA or

**1554**

Regulation Z's designated exceptions to the definition of a finance charge. To make these determinations, the Court must interpret Florida law.

 In cases controlled by state law, federal courts are bound to follow the decisions of the highest court of the state. *Huddleston v. Dwyer*, 322 U.S. 232, 64 S.Ct. 1015, 88 L.Ed. 1246 (1944). If the highest state court has not addressed the issue, federal courts should ascertain and apply state law as pronounced by intermediate state appellate courts. *Fidelity Union Trust Co. v. Field*, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109 (1940), *reh. den.* 311 U.S. 730, 61 S.Ct. 438, 85 L.Ed. 475 and *reh. den.* 314 U.S. 709, 62 S.Ct. 118, 86 L.Ed. 565 (1941). Federal courts should view an intermediate state court's opinion as "indicia of the leanings of the state's highest court," and follow those "leanings," unless the federal court is convinced that the state supreme court would reach a different conclusion. *Daigle v. Shell Oil Co.* 972 F.2d 1527 (10th Cir.1992). See also *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 236–37, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940).

. Although bound to follow Florida law as interpreted by the Florida courts on issues of Florida law, we face a peculiar situation in this case, for we are also bound to follow the Eleventh Circuit. Many of the exact issues raised by MSA in their motion to dismiss were addressed by the Eleventh Circuit in *Rodash v. AIB Mortgage*, 16 F.3d 1142 (11th Cir.1994). In that case, the Court held that Florida's intangible tax should have been disclosed as a component of the finance charge in the TILA document because it was a charge paid by the consumer directly for the extension of credit and the court held that no exclusions were applicable. The Court also found that the courier/Federal Express fee charged to the borrower was a finance charge which should have been labeled as such in the disclosure document.

At the time *Rodash* was decided, however, neither the Supreme Court of Florida nor an intermediate appellate court in Florida had addressed these TILA issues. More recently, however, a Florida intermediate appellate court ruled on the issues decided in *Rodash* and came to the opposite conclusion. *Pignato v. Great Western Bank*, 664 So.2d 1011 (Fla. 4th DCA 1995).[3] The Fourth District Court of Appeal of Florida held in *Pignato* that, as a matter of law, Florida's intangible tax on a note securing a loan was not a finance charge under TILA. In so holding, the Court specifically disagreed with the Eleventh Circuit's conclusions in *Rodash*. The Fourth District Court of Appeal is currently the highest court in Florida to address the treatment of the intangible tax with respect to disclosure under TILA.

 We must, therefor, determine whether a federal district court is obligated to follow circuit precedent on an issue of Florida law, once an intermediate state court maintains a contrary position, or whether the state ruling constitutes a subsequent change in Florida law, compelling federal courts to reevaluate the federal interpretation. Looking to the Eleventh Circuit for guidance, we appear bound to follow state court rulings on issues of state law, particularly where a state court specifically contradicts an earlier interpretation of state law by a federal court. *Roboserve, Ltd. v. Tom's Foods, Inc.*, 940 F.2d 1441, 1451 (11th Cir.1991).

In the *Roboserve* case, the Defendant argued that the Eleventh Circuit's earlier interpretation of a Georgia law was erroneous and should not be followed. The Court responded by admitting its predicament at being bound by circuit precedent unless a Georgia court intervened. The Court noted, "[i]f an intervening Georgia case has specifically contradicted *Novatel [Communications, Inc. v. Cellular Telephone Supply, Inc.*, 856 F.2d 151 (11th Cir.1988) ] ... we would not be so constrained because we must apply Georgia law, not Eleventh Circuit law, on the issue." *Id.* at 1451. An intervening state court opinion had been issued disagreeing with the Eleventh Circuit case and the *Roboserve*

---

**3.** The Plaintiffs filed a motion for rehearing and rehearing en banc in *Pignato* on November 1, 1995. These motions have not been ruled upon as of the date of this Order. Should the holdings relied upon by this Court be overturned on rehearing, portions of this Order should be reevaluated.

Court followed the law as more recently stated by the Court of Appeals of Georgia.

The Eleventh Circuit is not alone in considering a more recent interpretation of state law by state courts to justify reconsideration of circuit precedent. See also, *Jones–Hamilton v. Beazer Materials & Services*, 973 F.2d 688, 696 n. 4 (9th Cir.1992); *Derflinger v. Ford Motor Co.*, 866 F.2d 107, 110 (4th Cir. 1989); *Broussard v. Southern Pac. Transp. Co.*, 665 F.2d 1387 (5th Cir.1982); *Singletary v. Southeastern Freight Lines, Inc.*, 833 F.Supp. 917 (N.D.Ga.1993) ("a federal court should follow the latest appropriate decision at whatever point in the federal proceedings it comes.").

The Ninth Circuit requires federal courts to reevaluate the prior federal decision in light of the more recently handed down state decision where a state court has made a subsequent pronouncement of state law. *Owen v. United States*, 713 F.2d 1461 (9th Cir.1983). In that case, a Ninth Circuit decision was later contradicted by a state court of appeals decision. In evaluating the appropriate course of action, the Court noted that,

> [t]hese recent decisions by the California courts of appeal that have appeared subsequent to our *Commercial Union [Insurance Co. v. Ford Motor Co.*, 640 F.2d 210 (9th Cir.1981) ] decision requires us to reconsider the proper interpretation of § 877. Our interpretation in *Commercial Union* was only binding in the absence of any subsequent indication from the California courts that our interpretation was incorrect.

*Id.* at 1464. In that Circuit, if the highest court of the state has not ruled on an issue, federal courts are directed to follow the intermediate appellate courts of the state unless convinced that the highest court would decide differently. *Id.*

Similarly, other Circuits have found that "[w]hen a conflict exists between holdings of the ... Circuit and more recent determinations of state appellate courts, the interpretation of the Circuit is not binding on federal district courts." *In re New York Asbestos Litig.*, 847 F.Supp. 1086, 1111 (S.D.N.Y. 1994). In that situation, the federal court is directed to follow the outcome it believes the highest court of the state would follow. *In re E. & S. Dists. Asbestos Litig.*, 772 F.Supp. 1380, 1391 (E.D.N.Y.1991). As that Court noted, "the federal Court of Appeals is in the same position as a low state court vis-a-vis the New York Court of Appeals in construing state substantive law under *Erie [R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) ]." *Id.*

Thus, in this case we are compelled to reevaluate the Eleventh Circuit's *Rodash* opinion in light of the more recent *Pignato* decision. It is our duty to determine which is the more informed pronouncement of Florida law and to adopt the result the Florida Supreme Court would likely adopt. We have, however, certified this Order to the Eleventh Circuit for reconsideration of the issues involved in *Rodash*.

**B. Payment Of The Florida Intangible Tax Is Not A Finance Charge Under TILA.**

When the Fourth District Court of Appeal of Florida issued *Pignato v. Great Western Bank*, 664 So.2d 1011 (Fla.App. 4 Dist.1995), it specifically disagreed with the Eleventh Circuits interpretation of Florida's intangible tax in *Rodash v. AIB Mortgage*, 16 F.3d 1142 (11th Cir.1994). *Pignato* held that the Florida intangible tax should be excluded from disclosure as a finance charge under TILA. As the latest interpretation of Florida law, the federal courts should follow *Pignato*, unless it becomes clear that the Florida Supreme Court would reach a different conclusion. Because the *Pignato* decision is the only and most current interpretation of Florida law by a state appellate court, and it appears likely that the Florida Supreme Court would concur with it, we are bound to follow *Pignato*.

**1. Under TILA, Florida's intangible tax is exempt from disclosure as a finance charge because it is a fee imposed by a state for the perfection of a security interest.**

The *Pignato* Court examined the TILA definition of a finance charge and the noted exceptions that could apply to the in-

tangible tax. The Court determined that Florida's intangible tax comes under the statute's exclusion for, "[t]axes and fees prescribed by law that actually are or will be paid to public officials for ... perfecting ... a security interest." 12 C.F.R. § 226.4(e)(1). Since this exclusion applies, the Court held that the failure to disclose the tax as a component of the finance charge did not violate TILA.

In reaching this conclusion, the *Pignato* Court relied on the Commentary to Reg. Z in 4(e). That subsection provides:

4(e) Certain security interest charges.

1. Examples. Examples of charges excludable from the finance charge under § 226.4(e)(1) include:

· Charges for filing or recording security agreements, mortgages, continuation statements, termination statements, and similar documents.

· Stamps evidencing payment of taxes on property if the stamps are required to file a security agreement on the property. Only sums actually paid to public officials are excludable under § 226.4(e)(1).

Reg. Z, 12 C.F.R. Pt. 226, Supp. I, § 226.4, cmt. 4(e)–1 (1994) (Official Staff Interpretation of Regulation Z).

The *Pignato* Court noted that under Florida law, a documentary stamp tax must be affixed to a document before that document can be recorded, according to § 201.01, Fla. Stat. (1993). The Court reasoned that the intangible tax essentially acts as an excise tax on documents. The tax must be paid before a mortgage can be recorded and therefor must be paid before a mortgage can be perfected. The Court concluded that according to Regulation Z, Florida's intangible tax is a stamp tax which should be excluded from the broad definition of a finance charge under TILA because the tax must be paid in order to perfect a mortgage. Reg. Z, 12 C.F.R. Pt. 226, Supp. I, § 226.4, cmt. 4(e)–1 (1994).

As additional authority for this position, the *Pignato* Court looked to a 1972 opinion of the Attorney General of Florida, which concluded that Florida's intangible tax is essentially a "recording tax." The pertinent portions of that opinion state:

On January 13, 1970, the Cabinet of the State of Florida, sitting as the Department of Revenue, by resolution construed the tax on notes, bonds, or other obligations for payment of money which are secured by mortgage, deed of trust, or other liens upon real property in Florida to be a recordation tax. While the tax in question is included in the intangible tax chapter of the statutes, the nature of a tax is determined by its operation and practical effect rather than by the name applied to it by the legislature. *United States v. Lee,* Fla. 1943, [153 Fla. 94] 13 So.2d 919. Thus, the tax in question may be considered a recordation tax if that is its operation and effect even though denominated an intangible tax.

Op.Att'y.Gen.Fla. 072–374 (1972).

Relying on the reasoning in *Pignato,* the Opinion of the Florida Attorney General, and the TILA exceptions regarding charges for perfecting a mortgage and recording taxes, we hold that the Defendants in this case did not violate TILA by excluding Florida's intangible tax from the finance charge category of the disclosure statement because Florida's intangible tax is not a finance charge under TILA as a matter of law.

**2. The Federal Reserve Board's April 3, 1995 clarifying amendments.**

After the Eleventh Circuit issued the *Rodash* opinion, the Federal Reserve Board prepared "clarifying commentaries" to Regulation Z. 60 Fed.Reg. 16771. In the summary of the new commentaries the Board states its intentions in issuing the revisions.

The Board is publishing revisions to the official staff commentary to Regulation Z (Truth in Lending). The commentary applies and interprets the requirements of Regulation Z. The revisions clarify regulatory provisions and provide further guidance on issues of general interest, such as the treatment of the various fees and taxes associated with real estate-secured loans and a creditor's responsibilities when investigating a claim of the unauthorized use of a credit card.

60 Fed.Reg. 16771.

Comment 4(e–1) squarely addresses the intangible tax issue presented in this case. In noting examples of charges meant to be excluded from disclosure, the comment specifically points to, "charges or other fees required for filing or recording security agreements ... and similar documents, and intangible property or other taxes imposed by the state solely on the creditor and payable by the consumer (if the tax must be paid to record a security agreement.)" 60 Fed. Reg. 16,777 (§ 226.4, cmt. 4(e)–1(i)). The new Comment, thus, now expressly and clearly places Florida's intangible tax within the exception to charges which must be disclosed as components of a finance charge under TILA.

▮▮▮▮ With a Board comment directly on point, the issue becomes whether these commentaries should be given retroactive effect since the charges for the intangible tax in this case were disclosed prior to the effective date of the new comment. It appears that, in general, administrative rules are given retroactive effect only if Congress authorizes retroactive rulemaking and the agency clearly intended that the rule have retroactive effect. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988). In addition, an amendment will not compel retroactive application if the amendment is truly substantive in nature. *United States v. Washington*, 66 F.3d 1101 (9th Cir.1995). However, "new language need not imply new substance." *Homemakers North Shore, Inc. v. Bowen*, 832 F.2d 408, 413 (7th Cir.1987). The Board's April 1995 additional commentary does not necessarily constitute a substantive change in the law.

▮▮▮▮ A new rule intended to clarify or apply the law to a new factual setting does not constitute a substantive change in the law. *Pope v. Shalala*, 998 F.2d 473 (7th Cir.1993). A rule meant to clarify an unsettled area of the law does not change the law, but rather clarifies "what the law according to the agency is and has always been," *Id.* at 483, and "is no more retroactive in its operation than is a judicial determination construing and applying a statute to a case in hand." *Manhattan General Equip. Co. v. Commis-*

*sioner*, 297 U.S. 129, 135, 56 S.Ct. 397, 400, 80 L.Ed. 528 (1936).

▮▮▮▮ To determine whether a rule clarifies existing law or substantively changes the law, for purposes of determining whether a rule should be retroactively applied, courts should give great weight to the agency's expressed intent. *Pope*, 998 F.2d at 483. If the agency expressly communicates that its intention in issuing the regulation was to clarify rather than change existing law, courts should defer to such announcements unless the revisions are in plain conflict with earlier interpretations. *Id.*

▮▮▮▮ In general, an agency's regulations interpreting matters over which the agency is charged to administer are given considerable deference. See *Sarasota Memorial Hospital v. Shalala*, 60 F.3d 1507 (11th Cir.1995). As noted earlier, Official staff interpretations of the Federal Reserve Board's Regulation Z are binding, unless demonstrably irrational. *Johnson v. Fleet Finance, Inc.*, 4 F.3d 946 (11th Cir.1993). Deference to the views of the Federal Reserve Board is especially appropriate in the process of interpreting Truth in Lending Act and Regulation Z, and, unless demonstrably irrational, the Federal Reserve Board Staff opinions construing the Act or Regulation should be dispositive. See *Ford Motor Credit Company v. Milhollin*, 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980).

▮▮▮ In its summary, the Board specifically states that the new commentaries were meant to clarify existing law and to provide guidance in applying the regulations. 60 Fed.Reg. At 16771. As such, the Court defers to the Board's direct statement of intent with respect to the revisions, and does not view the commentaries as a substantive revision of the statute. The Board's revisions quoted above appear to clarify and not change what was a very unsettled area of the law. Further, there is no evidence that the Board's new commentary takes an opposite or conflicting position to a previous interpretation. Therefor, the Court concludes that the Board's intentions should be followed. This commentary was designed to clarify existing law and it should be retroactively ap-

plied. The Court is not alone in reaching this conclusion. *Hickey v. Great Western Mortgage Corp.,* 1995 WL 317095 (N.D.Ill. 1995).

The *Pignato* Court rested its holding concerning Florida's intangible tax, in part, on these revisions to the Official Commentary of the Federal Reserve Board. The *Pignato* Court agreed that the Board in fact issued these revisions to clarify the existing commentary, and that the revisions do not constitute a substantive change in the law. The *Pignato* Court also read these revisions as having retroactive effect. That Court found that as long as the creditor itemized and disclosed the intangible tax to consumers, the Board's revisions, acting retroactively, worked to exclude those charges from disclosure under the finance charge portion of the statement. We agree and find that the Board's revisions serve as an alternative source for holding that Florida's intangible tax is not a finance charge under TILA.

3. **Florida's intangible tax is exempt from disclosure under TILA, because Florida statutes authorize lenders to pass the tax on to consumers.**

█ It appears possible that the *Rodash* Court overlooked a Florida Statute suggesting Florida's intangible tax is not a finance charge under TILA. In its opinion, the *Rodash* Court noted in footnote 10 that the exception denoted in 12 C.F.R. § 226.4(a), Comment 6, did not apply. Under that exception, Florida's intangible tax would not constitute a finance charge, "if applicable law imposes the tax solely on the creditor, but directs or authorizes the creditor to pass the tax on to the consumer." F.R.B.Commentary on 12 C.F.R. § 226.4(a), Comment 6, reprinted in 12 C.F.R. pt. 226, Supp. I. The *Rodash* Court concluded that, "Florida imposes the intangible tax solely on the creditor and does not expressly authorize the creditor to pass the tax on to the consumer."

█ This conclusion appears to be erroneous. Florida law expressly authorizes creditors to pass on the intangible tax to borrowers through Fla.Stat. § 665.074(1) and Fla.Stat. § 687.12(1). The *Rodash* Court did not address the applicability of these statutes in its opinion, suggesting it was unaware of

their existence at the time the decision was rendered.

Florida Statute § 665.074(1) expressly authorizes savings and loan associations to charge borrowers for reasonable expenses incurred in making real estate loans, including "taxes or charges imposed upon or in connection with the making and recording of any loan." Fla.Stat. § 665.074(1). Florida Statute § 687.12(1) extends the provisions of § 665.074 to all lenders licensed under Florida law, including mortgage companies. *See, South Pointe Development Co. v. Capital Bank,* 573 So.2d 939, 940 (Fla.Dist.Ct.App. 1991). Taken together, these Florida statutes, by their plain language, permit lenders to pass on Florida's intangible tax to borrowers. Florida's intangible tax, therefor, comes under yet another TILA exclusion to the finance charge definition.

In further support of this point, just three weeks after the *Rodash* decision, the Florida Senate adopted H.B. 2557 announcing that in Florida creditors have always been authorized to pass on the intangible tax to borrowers. This clarifying amendment provides that, "[w]ith respect to the nonrecurring tax imposed pursuant to § 199.133, that taxpayer shall be solely liable for payment of the tax but may pass on the amount of such tax to the borrower or mortgagor." Fla.Stat. § 199.135(4).

The Florida Legislature appears to have meant no substantive change in Florida law by this amendment. It was enacted, "for the purpose of clarifying and confirming the existing authority of mortgage lenders, under applicable law and practice, to pass on to borrowers and mortgagors the nonrecurring tax imposed pursuant to section 199.133, Florida Statutes." Fla.Legis. ch. 94–353, § 69 (1994).

Although this Court finds this additional clarification from the Florida Legislature unnecessary to reach the conclusion that Florida law authorizes the intangible tax to be passed on to borrowers, the amendments add credence to the Court's holding that the Florida intangible tax is not a finance charge under TILA and thus does not have to be reported as such.

### C. Other Charges.

 The Plaintiffs' Third Amended Complaint alleges additional TILA violations based on MSA's failure to classify a flood certification fee, a wire fee, and a document preparation fee as finance charges in the disclosure statement. The Court finds that the Defendant's arguments with respect to these allegations would require looking beyond the Complaint. The Court will deny the motion without prejudice with respect to these additional charges, so that these issues can be more appropriately dealt with on motion for summary judgement, or at a later stage in the proceedings.

### IV. CONCLUSION

THE COURT has considered the Motion and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED that the said Motion be, and the same is hereby:

(1) Defendant's Motion to Dismiss Count I of the Third Amended Complaint is hereby GRANTED with respect to Florida's intangible tax and is hereby DENIED with respect to the flood certification, wire fee, and document preparation fees, without prejudice to raise these issues anew on motion for summary judgment.

(2) Defendant's Motion to Dismiss Counts II and III of the Third Amended Complaint is hereby GRANTED.

DONE AND ORDERED.